JOHN M. HARMSEN et al., appellees, v. IOWA STATE HIGHWAY COMMISSION, appellant.

No. 50107.

(Reported in 105 N.W.2d 660)

OCTOBER 18, 1960.

Norman A. Erbe, Attorney General; C. J. Lyman, Special Assistant Attorney General, and John L. McKinney, trial counsel, both of Ames, and Savery & Yarham, of Atlantic, for appellant.

Harold De Kay, of Atlantic, for appellees.

GARRETT, J.—The defendant, Iowa State Highway Commission, condemned for highway purposes a strip of land about 300 feet wide across the north side of the 160-acre farm of John M. and Bernice V. Harmsen, who, with Anita State Bank, mortgagee, are plaintiffs.

The proceedings took 22.93 acres of good farm and pasture land for right of way for Interstate Highway No. 80 and a proposed creek channel change. The farm is bordered on the

west and south by gravel county roads but the west road has been closed where Highway No. 80 crosses it.

A sheriff's jury awarded plaintiffs damages of $5661.30 and after trial a district court jury awarded them $10,400. The defendant, Highway Commission, has appealed.

I. Appellants contend the trial court erred in admitting, over timely objection, the opinion testimony of John M. Harmsen that the fair and reasonable market value of the materials and labor for a floodgate was $1000.

Before the condemnation Harmsen and the adjoining landowner to the north shared the cost of building and maintaining the 180 rods of fence between them, including the water gap at Crooked Creek. Thereafter it fell to Harmsens to maintain the entire fence. The original fence was a so-called "hog-tight" fence such as is required by plaintiffs' livestock operations.

Approximately 76 acres of land north of plaintiffs' farm drained across their land. The appellant put a 72-inch tube across the highway to take care of that drainage, and moved the channel of Crooked Creek placing a double bridge with openings 40 feet wide to take care of other drainage.

Harmsen testified without objection that this change would require him to install a floodgate. There is no evidence that it was needed before nor is it disputed that it is required now. Before the condemnation the water gap was taken care of by Harmsens and neighbor to the north. The floodgate appears to be a necessary replacement for the former fence across Crooked Creek and it would be proper to show the need for it and to give the jury a word picture of the kind of gate required. It was error to permit Harmsen to give it as his opinion that the fair and reasonable market value of the labor and materials necessary to construct such floodgate was $1000 or any other specific amount. This gate was a hypothetical item, entirely new to this farm. No evidence was offered as to the kind of gate needed, the materials required or the manner of construction. Evidence regarding a hypothetical fence or floodgate is not admissible. Randell v. Iowa State Highway Commission, 214 Iowa 1, 241 N.W. 685; Dean v. State, 211 Iowa 143, 233 N.W. 36; Welton v. Iowa State Highway Commission, 211 Iowa 625, 233

N.W. 876; Chicago & N.W. Ry. Co. v. Drainage Dist. No. 5, 142 Iowa 607, 121 N.W. 193; Hanrahan v. Fox, 47 Iowa 102; Kosters v. Sioux County, 195 Iowa 214, 191 N.W. 993.

In Trachta v. Iowa State Highway Commission, 249 Iowa 374, 378–380, 382, 383, 86 N.W.2d 849, 852, we said:

"The real question before us in this case is the competency of testimony offered to show the estimated cost of structures deemed necessary to counteract a claimed detriment to the property suffered by the condemnation or taking under eminent domain. When evidence of the cost of new structures—in one case a new corral on the south forty, and in another, new drain tile to care for an alleged increase in surface water discharged on plaintiffs' north eighty—was offered, objections were made and sustained on the basis that such evidence was speculative, uncertain, and did not tend to prove the proper measure of damages. * * * By reason and by precedent we recognize the general rule that the various detriments may be shown in such matters, but estimates of costs necessary to offset the detriment for erecting new structures such as buildings, fences, walls, and drain tile cannot be shown. This rule is discussed and the reasons for it are fully set out in Randell v. Iowa State Highway Comm., 214 Iowa 1, 10, 241 N.W. 685. There appears to be but one exception, which relates to the moving of a present structure such as a fence where exactly the same wire, posts and braces are used, and there is no uncertainty as to its establishment and future maintenance. Randell v. Iowa State Highway Comm., supra. * * *

"Testimony of collateral facts in support of estimates of value in a condemnation case must be left largely to the discretion of the presiding judge. We have been consistent in holding evidence of separate values of needed improvements is not admissible as an independent item of damage. Evidence of improvement values can only be used to explain and support the estimates of value of the entire property. Hayes v. Chicago, R. I. & P. Ry. Co., 239 Iowa 149, 152, 30 N.W.2d 743, and citations; Ranck v. Cedar Rapids, 134 Iowa 563, 566, 111 N.W. 1027; Randell v. Iowa State Highway Comm., supra. On direct examination of value witnesses, ordinarily the market value of

the land together with the improvements, taken as a whole and not separately, is to be shown, and the value of the improvements apart from the land may not be then shown. Ranck v. Cedar Rapids, supra; Hayes v. Chicago, R. I. & P. Ry. Co., supra, and citations.

"* * * but that evidence of the cost of any plan or scheme to overcome the lessened value is much too speculative and uncertain, even though accurate estimates of proposed structural costs may be available. * * * we said on page 8 of 214 Iowa: '* * * appellee unquestionably may show this increased burden on the farm, if it be such, in order that the jury may determine the difference in the value of the land immediately before and immediately after the condemnation. When doing that, however, appellee has no right to ask his witnesses to speculate and guess concerning the cost aforesaid, as he did in this case. * * * Clearly the district court should have refused to permit the witnesses to answer. Moreover, * * * questions of this kind, which ask the witness to enter the field of speculation and conjecture, never should be asked or answered.' "

Randell v. Iowa State Highway Commission, supra, states at page 13 of 214 Iowa: "Obviously, under the facts and circumstances here presented, it was error under the ruling announced in Dean v. State (211 Iowa 143), supra, and the other cases previously cited in that group. As said in the Dean case, supra, the admission of evidence concerning the cost of building, repairing, and replacing a hypothetical fence was error under the facts in that case."

Dean v. State, supra, 211 Iowa 143, 148, 149, states: " 'In determining the amount of damages, it was proper for the jury to take into consideration all pertinent facts pertaining to the condition of the farm before and after the construction of the road. The award of damages is not to be made, however, by the assessment of a series of specific items.' * * * First, the cost of the particular fence desired by appellees is immaterial because such cost does not in any way fix the proper measure of damages * * *. Damages are to be based upon the depreciation in the land value because the highway is constructed; not what the expense may be in building appellees' special fence. * * * As just

indicated, the fact that a fence on land of this kind may have to be built, repaired, and replaced, is an element to be taken into consideration when fixing the value of appellees' land after the highway's establishment. All damages to the land * * * are to be considered as a whole, 'in a lump sum,' as distinguished from separate items. Manifestly, under the evidence admitted, the jury were given a separate item, and would naturally understand that they were to consider it independent of the damage to the farm as a whole. For these reasons, the evidence should not have been admitted."

█ Plaintiffs insist defendant's objection to the question calling for an opinion as to the cost of the floodgate was not sufficient and that the court did not err in overruling it. The objection was: "That's objected to as not a proper measure of damages. It is irrelevant and immaterial." Plaintiffs sought to show the cost of the hypothetical floodgate as it might affect the measure of the damages sustained by them. The objection was sufficient and should have been sustained. It is suggested it did not call to the court's attention the fact that the answer called for was speculative and conjectural. It is appropriate to say that, taken in connection with the previous limited examination of Harmsen on this point, the objection would suggest to the court that the answer would be speculative and conjectural rather than factual. It was error to receive the answer, and, since it may have influenced the jury in arriving at its verdict, prejudice must be presumed.

█ II. Appellant states: "It was error for the trial court to admit over objection the testimony of the witness Paul Crouse that the Charles Hecht farm land sold at auction for $200 per acre." He testified on direct examination that he was familiar with land values of farms in the neighborhood of the Harmsen land generally and had gone to auction sales where farms of comparable size and quality were sold. On cross-examination he admitted that the auction sale of the Charles Hecht farm was the only one he had attended. It was objected that no proper foundation was laid for the testimony as to the Hecht sale. He stated, "The Hecht farm was 120 acres located by the high-school building outside of Anita. Some of it was pasture and

some of it was crop land, and there was a ditch going through it and it was cut up quite a bit and it was sold in 1957."

Merle Morgan, a general farmer living in the neighborhood, testified: "The Hecht property was 120 acres divided into three separate parcels. For the general farming operation, there was a grove of trees on it, and there was some ditches on the property. As many as there were on the Harmsen property. That property was used for pasture and for crops. There was no dairy operation there but the property was close to Anita."

These witnesses were testifying, at this point, about a farm that sold for $200 per acre. They were not placing a valuation upon the Hecht farm—the sale had fixed that. The comparison of the similarities and dissimilarities of the two farms might well have been described more fully but the defendant was not prejudiced, particularly in view of the fact the case will go back for a new trial. The witnesses were well qualified to give their opinions as to the value of the Harmsen farm. The following authorities support the trial court's ruling. Redfield v. Iowa State Highway Commission, 251 Iowa 332, 99 N.W.2d 413; County of Los Angeles v. Faus, 48 Cal.2d 672, 312 P.2d 680, 684; 118 A. L. R. 869; 174 A. L. R. 387.

III. It is asserted "It was error for the trial court to overrule the defendant-appellant's objection to improper comments made by plaintiff-appellees' counsel in his cross-examination of the witness, Robert Percival." A witness testified, "A. I wouldn't call it all level, no sir. There were some water holes in it, some draws down through it that were lower elevation that the water did flow through." This answer brought from the examining counsel the statement that "Apparently there is no testimony that will support that." Objection to this comment of counsel was overruled. The comment was improper but every trial lawyer knows how inadvertent statements are made in the course of a trial and in the absence of a showing of prejudice reversal should not be justified.

IV. Appellant states it was error for the trial court to refuse to give its Requested Instruction No. 2. We do not deem it necessary to pass upon this question in view of the failure of appellant to comply with rule 196, Rules of Civil Procedure,

which provides that "all objections to giving or failing to give any instruction must be made in writing or dictated into the record * * * specifying the matter objected to and on what grounds. No other grounds or objections shall be asserted thereafter, or considered on appeal."

In view of our holding in Division I we must reverse.— Reversed.

All JUSTICES concur.