Robert F. WILKES, Appellant,

v.

IOWA STATE HIGHWAY COMMISSION,
Appellee.

No. 53658.

Supreme Court of Iowa.

Nov. 12, 1969.

Miller, Pearson & Gloe, Decorah, for appellant.

Richard C. Turner, Atty. Gen., Charles O. Garretson, Asst. Atty. Gen., to Iowa State Highway Commission, Ames, and Henry L. Holst, Special Asst. Atty. Gen., and Counsel to Iowa State Highway Commission, Ames, for appellee.

LARSON, Justice.

This appeal comes to us pursuant to an eminent domain proceeding in the district court wherein the condemnee was awarded two verdicts, one for the taking of real estate and the other for personal property damaged or reduced in value as a result of the taking. When the trial court sustained condemnor's motion for a new trial, condemnee appealed.

On March 11, 1968, the Iowa State Highway Commission notified the appellant herein, Robert Wilkes, that approximately 3.8 acres of his land in the City of Decorah, Winneshiek County, Iowa, would be appraised for condemnation on March 19, 1968. Upon this land and .7 of an acre of adjacent railroad land Mr. Wilkes operated a livestock sales business known as the Decorah Sales Commission. Upon the railroad land was located a sale barn, sale ring, cafe, scales, and related items such as pens and runways for the stock. It was obvious the business could not operate at this location without the use of both tracts.

The condemnation commissioners viewed the 3.8 acre tract which Wilkes owned in fee, gave no consideration to any damage to the facilities located upon the adjacent land, and awarded him the sum of $29,183 for the real estate taken. Being dissatisfied with the award, the Highway Commission appealed. The condemnee Wilkes then filed his petition in the district court as required in section 472.22 of the Code,

alleging inter alia that the real estate taken had been used by him and his predecessors in conjunction with the leased adjacent railroad tract in the sales commission business and that the sale barn and other buildings considered by all parties as personalty were located upon the leased tract. He sought $50,000 for the real estate taken and $11,000 for the destruction or reduction in value of the personal property on the railroad land. The Highway Commission's answer admitted the taking and generally denied all other allegations.

In the trial Wilkes offered testimony as to his purchase of the 3.8 acres of land and the facilities and personal property located on the railroad land in 1964 for the sum of $37,500, as to his leasehold rights in the leased land and ownership of the personal property thereon used in the sales commission land, and as to its destruction and value reduction as a result of the taking of his real estate. The State objected to the evidence relating to ownership and damage to the alleged personal property located on the railroad land on two principal grounds, (1) that the district court had no jurisdiction to consider the issue, and (2) that damages to personal property located on land other than that taken are not compensable. These objections were not sustained, and in submitting the case to the jury on June 19, 1968, two verdict forms were provided, one for the real estate taken and the other for the reduction in value of condemnee's personal property located on adjacent railroad land used in connection with the real estate taken. The jury returned a verdict for $36,000 for the real estate condemned, and a verdict for $11,000 for the reduction in value of the personalty.

On June 27, 1968, the Highway Commission moved the court to set aside the "verdict" and grant a new trial. Upon specific grounds set forth in the motion, the trial court sustained the motion and on January 22, 1969, granted a new trial. Condemnee appeals.

Appellee asserted five grounds in its motion for a new trial: (1) That there was a lack of jurisdiction to consider the issue of damages to personal property located on land of another; (2) that the verdict is contrary to the law; (3) that the verdict is not supported by sufficient evidence; (4) that errors occurred in the court's rulings on objections and in its instructions to the jury listed as (a) through (u); and (5) that the court erred in failing to instruct the jury as to the proper measure of damages. The trial court found grounds (2), (3) and (5) general in nature, and stated, in view of its conclusions in grounds (1) and (4), they would not be separately considered. Since no complaint is made as to this determination, we also shall direct our attention to grounds (1) and (4). Although the issues raised therein are deemed important to this decision, the real problem presented is whether under section 472.14 of the Code, 1966, a condemnee may recover for damages to his personal property located on leased third-party-owned land adjacent to the real estate being taken under eminent domain proceedings when said personal property is used in connection with the business being conducted on the condemned land.

I. Appellee's primary contention is that evidence as to the alleged damages to personal property on railroad land was inadmissible, for the reason that this issue was not presented to or first considered by the condemnation commission. Therefore, it argues, the district court lacked jurisdiction of that subject matter. The trial court seemed to find merit in that contention and felt it erred in accepting evidence of damages to personalty and, therefore, should not have submitted a separate verdict as to that item.

In an appeal from an award of a condemnation commission the district court hears the matter de novo and has jurisdiction of the person of all parties brought before it by proper notice, and of the subject matter of all property damaged as a result of the condemnation, regardless of

what matters were improperly considered or overlooked by the condemnation commission. Eggleston v. Town of Aurora, 233 Iowa 559, 10 N.W.2d 104; Wolfe v. Iowa R. & L. Co., 173 Iowa 277, 155 N.W. 324; Hall v. Railway Co., 141 Iowa 250, 119 N. W. 927; McCall v. Iowa State Highway Commission, 217 Iowa 1054, 252 N.W. 546; Cook v. Boone Suburban Electric Ry. Co., 122 Iowa 437, 98 N.W. 293; Felker v. Iowa State Highway Comm., 255 Iowa 886, 124 N.W.2d 435; 27 Am.Jur.2d, Eminent Domain, § 470, p. 394.

In Eggleston v. Town of Aurora, supra, this court held that on appeal the trial was de novo and even the failure to make one of the equitable owners of the land being condemned a party to the original proceedings would not prevent such owner from being included in the appeal and an award of damage made to her. It was stated therein at page 563 of 233 Iowa, at page 106 of 10 N.W.2d: "It is, of course, imperative that all interested parties have an opportunity to be heard. * * * The matter was triable de novo in the district court and her rights were in no way jeopardized because she was not made a party in the original condemnation proceedings wherein the sheriff's jury set an allowance for damages."

In McCall v. Iowa State Highway Commission, supra, the court held, the fact that the condemnor in the condemnation proceedings before the sheriff's jury described only the property to which the condemnee had the record title, did not prevent the condemnee *on appeal* from recovering damages to the entire farm by showing equitable ownership of other land, which together with the land owned in fee composed the whole farm.

We have also held, as appellant contends, when the condemnor appeals and the condemnee files a petition asking for damages in excess of that allowed by the condemnation commission, the condemnee's petition becomes a counterclaim. In Felker v. Iowa State Highway Commission, supra,

at page 890 of 255 Iowa, at page 438 of 124 N.W.2d, this court said: "R.C.P. 215, 58 I.C.A. provides that a party may dismiss his own petition or counterclaim at any time before trial has begun; but he may not dismiss an opposing counterclaim. * * * we think the plaintiffs' petition here, when the defendant had appealed from the award, was in substance a counterclaim."

In the case at bar condemnee's petition asked for further damages and claimed damages to use-connected personal property which had been ignored by the condemnation commission. This claim might also be classified as a compulsory counterclaim in the trial of the appeal, as it indeed arose out of the same transaction or occurrence, the condemnation of condemnee's property. If so viewed, the condemnee would be forced to assert his extended claim therein or lose all right to be heard on elements of damages overlooked by the commission.

In Des Moines W. W. Laundry v. City of Des Moines, 197 Iowa 1082, 198 N.W. 486, this court recognized that merely compensating one for the property taken from him does not amount to just compensation or does not make him whole, but held such a person is also entitled to recover in the condemnation proceeding for damage to other property interests affected by the taking. In the discussion at page 1090 of 197 Iowa, at page 490 of 198 N.W., it is stated: "An established trade or business connected with a location clearly enhances the value of a leasehold interest, and just compensation contemplates this fact. In condemnation proceedings, the word 'damage' embraces more than the mere physical taking of property, and is not restricted to cases where the owner is entitled to recover as for a tort at common law."

■■ We are satisfied that all of condemnee's property substantially interfered with by a taking in a condemnation proceeding should originally be considered by the condemnation commission, for such is the subject matter of the action. Relevant

matters overlooked by the commission can and should be brought before the district court in an appeal petition such as was filed herein. To decide contra would indeed permit a condemnor, by its notice of condemnation, to limit the property interests of a condemnee for which damages may be assessed. This would not only be unjust and inequitable, but a violation of the constitution and section 472.14 of the Code. Condemnee's recovery, we have said, is not restricted to the value of the land taken, but he is entitled to have assessed all damages as the taking occasioned to the land as an entirety. Cook v. Boone Suburban Electric Ry. Co., supra.

True, we have held that jurisdiction of the district court in condemnation cases is appellate only and that the notice required by section 472.18 is a notice of appeal. V. A. Carmichael v. Iowa State Highway Commission, Iowa, 156 N.W.2d 332, 335, and citations. However, this does not mean, when such notice is properly given, the district court obtains jurisdiction only over the subject matter and the parties brought before the condemnation commission. The subject matter in such an action is private property taken for a public use, and Article I, Section 18, of the Iowa Constitution, recognizes this subject when it states: "Private property shall not be taken for public use without just compensation first being made, * * *." Furthermore, section 472.14 of the 1966 Code provides guidelines for determining subject matter in condemnation actions. It states:

"The commissioners shall, at the time fixed in the aforesaid notices, view the land sought to be condemned and assess the damages which the owner will sustain by reason of the appropriation; and they shall file their written report with the sheriff. Where the land sought to be condemned is a part of a larger tract of land, and in making such assessment at the request of the condemnee the commissioners shall divide the damages into two parts, namely, the value of the land (including improvements thereon), sought to be condemned, and *the consequential damages* resulting to the owner from such condemnation and appropriation. * * *

"In assessing the damages the owner or tenant will sustain, the commissioners shall consider and make allowance for personal property which is damaged or destroyed or reduced in value. * * *" (Emphasis supplied.)

It is evident from this section of the Code that the subject matter involved in a condemnation action in this jurisdiction is (1) the land to be taken, (2) the consequential reduction in value of other effected property, and (3) the personal property damaged or destroyed or reduced in value due to the taking.

■■ It is the duty of the commissioners to consider all of these items of damage and, if requested by the condemnee, to divide the damages as to a direct taking and as to those which are consequential. Although it does not appear here that condemnee made such a request in writing, we believe the commissioners were required to consider *all* items of damage for which compensation is necessary, and conclude, unless the law does not require compensation for damage to personal property located on land other than that taken, this item of damage must be classified as part of the subject matter of the action and that the district court did have jurisdiction to consider that damage item when brought to its attention in condemnee's petition filed pursuant to condemnor's appeal. As further bearing thereon, see Freshwater v. Wildman, 254 Iowa 404, 117 N.W.2d 910; 48 Va.L.Rev. 437.

II. We come now to what may be said to be the nub of this controversy. Does section 472.14 provide for compensation for damages to condemnee's personal property which is authoritatively located upon land other than that condemned but is used in connection with a business operated upon the land taken? As to that question, this is a case of first impression, at least in

this jurisdiction. Our search for authority in other jurisdictions was also fruitless. We must then seek legislative intent from the language of the statute and from the history of this legislation, applying the usual rules of construction. It must be noted that section 472.14 was amended by chapter 318, section 3, of the Acts of the 58th General Assembly in 1959 by adding thereto these words: "In assessing the damages the owner or tenant will sustain, the commissioners *shall* consider and make allowance for personal property which is damaged or destroyed or reduced in value." (Emphasis supplied.) There is nothing to indicate this personal property must be located upon the real estate taken and we cannot in good conscience supply that restriction here.

On three previous occasions we have given consideration to this amendment, but never considered damages to personal property of the condemnee maintained on land other than that taken. See Skaff v. City of Sioux City, 255 Iowa 49, 120 N. W.2d 439; Freshwater v. Wildman, supra, 254 Iowa 404, 117 N.W.2d 910; Estelle v. Iowa State Highway Commission, 254 Iowa 1238, 119 N.W.2d 900.

In Skaff, the majority of the court declined to hold the costs of moving one's personal property from his condemned land was a devaluation thereof under section 472.14 as amended, but asserted that the loss, if any, is to be shown as a reduction of its market value due to the taking. The minority view was that the moving costs, necessarily due to the condemnation of the land on which the personal property was situated, could be shown as a reduction in value thereof as intended under the statutory amendment. Both the Freshwater and Estelle cases were referred to and discussed in the Skaff case, and all seemed to agree that it was proper to show as an element of damage the reduction of value of personal property when it was located upon condemned property owned in fee or under a leasehold. None consider the reduction in value of personalty not actually located

upon the property taken, and yet, if the statute be given a liberal construction, as we believe it must, there is no provision therein, specific or implied, which requires it to be so located. If it appears such personalty is used exclusively with the land condemned, is owned by condemnee, and is reduced in value by the taking, that is sufficient to permit recovery. It may be noted that our decision in Skaff giving this section a somewhat narrow construction as to the meaning of damage, met with legislative disapproval because it thereafter further amended section 472.14 by chapter 378, Acts of the 61st General Assembly in 1965 to provide as compensable damages the reasonable costs of moving personal property from the condemned land not to exceed $500 or to a point no greater than 25 miles distance.

In the case at bar condemnee makes no claim for the loss of his leasehold and does not ask for moving expenses of the personal property located upon the railroad land. His allegation and proof were as to the reduction in value or destruction of his use-connected personal property located on leased land adjacent to land owned by him in fee and taken for public use. His claim of loss was properly shown as the difference between the before and after value of that property, and appellee concedes, had the personal property been located upon the land taken, this loss of value or destruction would have been properly shown as compensable under section 472.14.

Should the fact that personal property, although use-connected with the real estate taken, was not on the condemned land prevent recovery for its destruction or reduction in value? We think not, for such a determination would not recognize reality and would unjustly deny compensation for a direct consequential property loss due to the taking. This, we believe, would not give to the Iowa Constitution or the statute the intent and purpose fairly evident from the language used therein.

Article I, Section 18, of the Iowa Constitution, provides:

"Private property shall not be taken for public use without just compensation first being made, or secured to be made to the owner thereof, as soon as the damages shall be assessed by a jury, who shall not take into consideration any advantages that may result to said owner on account of the improvement for which it is taken."

Section 472.14 obviously implements this provision and, as we have pointed out, does not in any way restrict loss in value of personal property affected by the taking to that located on the real estate condemned. On the contrary, a legislative intention to compensate a condemnee for other than an actual taking is reflected in chapter 378, Acts of the 61st General Assembly. In other words, a loss to condemnee resulting directly from the taking is compensable.

 Furthermore, we have often stated generally the purpose and intent of eminent domain laws are to secure a person from loss due to a taking of his property for public use, and have said he is to be made "whole", as near as possible, by way of adequate compensation for his loss. Des Moines W. W. Laundry v. City of Des Moines, supra, 197 Iowa 1082, 1090, 198 N.W. 486, 490; Stortenbecker v. Iowa Power and Light Co., 250 Iowa 1073, 1076, 96 N.W.2d 468, 470; Sater v. Burlington & Mt. P. Plank Road Co., 1 Iowa (Clark) 386; Iowa Uniform Jury Instructions Annotated, No. 14.2. We think it is a fair conclusion that the legislature had this object and purpose in mind when it enacted the amendments to section 472.14 in 1959 and 1965. It specifically included the reduction in reasonable market value of condemnee-owned personal property used in connection with the real estate condemned, regardless of who owned the fee title to the land upon which the personal property was situated. As bearing thereon, see Estelle v. Iowa State Highway Commission, supra; 27 Am.Jur.2d, Eminent Domain, § 266, pp. 53 and 54. In other words, we

hold one occupying land under a leasehold upon which he has personal property used exclusively with his condemned land may recover for the resulting reduction in value of his personal property in order to be made whole, and that this damage is separate from the loss resulting from any enhanced value of the real estate taken, due to its use in connection with personalty on adjacent land, such as appears in Crist v. Iowa State Highway Commission, 255 Iowa 615, 123 N.W.2d 424.

Appellant here contends that by substantial and competent evidence he has shown he was the owner of personal property in the form of buildings located upon adjacent real property which he leased and used exclusively with his condemned land, that he showed by a proper measure its reduction in value, and that the jury award for that damage in a separate verdict was proper. After a careful review of this record, we are inclined to agree.

III. Although many alleged errors were advanced by appellee in its motion for a new trial and we have carefully considered each of them, except for those sustained by the trial court and those argued in this appeal, we do not deem it necessary to discuss them separately in this opinion.

It is appellant's position that the trial court erred in sustaining appellee's motion for a new trial because (1) none of the grounds urged by it were tenable, (2) the court did not purport to act under its broad discretionary power in the interest of justice, and (3) it granted a new trial on invalid specific grounds. On the other hand, he urges that, since the trial court did not err as to any alleged specific rules of law at the time of trial, the new trial order must be reversed and the verdicts reinstated. As authority for his position he directs our attention to our pronouncements in Kessel v. Hunt, 215 Iowa 117, 123, 244 N.W. 714, 716, where a motion for a new trial had been sustained and on appeal this court reversed the trial court's order. There the misconceived error related to an

instruction. Of course, we recognized that, even though the court errs in sustaining a specific ground urged, that error may be overlooked if other sufficient grounds to sustain the order appears in the motion for a new trial. Thompson v. Butler, 223 Iowa 1085, 274 N.W. 110.

In Kessel v. Hunt, supra, we said:

"* * * Ordinarily we hesitate to interfere with the trial court's discretion in the granting of a new trial. The rule, however, has been long established that where a new trial is granted by the trial court strictly upon a definite question of law, it becomes our duty to review the order as we would any other alleged error, and to reverse the ruling if erroneous. (Citations)

"On the other hand, we have held repeatedly that an order, in general terms granting a new trial, will be deemed as discretionary on the part of the trial court and we will reverse only for abuse of discretion. Whether in a given case the order appealed from is a general one is sometimes debatable. Where the order granting a new trial ignores specific grounds and neither sustains nor overrules the specific grounds of the motion, we deem such an order as general and as discretionary. * * *"

To the same effect, see Harris v. Clark, 251 Iowa 807, 809, 103 N.W.2d 215, 216, where the specific error determination was overruled, and Schroedl v. McTague, 259 Iowa 627, 643, 145 N.W.2d 48, 58, where a specific error determination was upheld.

Although the defendant here used some general terms in its motion for a new trial, such as "irregularity in the proceedings of the court which prevented defendant from having a fair trial," it is abundantly clear it relied upon specific errors and that the trial court gave careful consideration to them in making its specific ruling.

In the trial court's written ruling on the motion for a new trial, it stated:

"* * * In its Motion for New Trial defendant first contends that this court did not have jurisdiction of the subject matter of damages to the personal property on the land allegedly leased by plaintiff from the railroad, the jurisdiction of this Court over the case at bar being appellate only. It is true, as argued by plaintiff, that the defendant did not attack, by Motion to Strike, the allegations of the petition regarding damages to plaintiff's property located on the leased land. Instead, defendant denied these allegations. But before the taking of evidence commenced, defendant raised the jurisdictional question by a Motion in Limine dictated into the record. Defendant also objected consistently and repeatedly to the introduction of testimony bearing on this issue, and to the giving of instructions permitting recovery for damage to property located on the leased premises.

"Defendant concedes in its Brief and Argument that under Iowa Law, including the case of Crist v. Iowa State Highway Commission, 255 Iowa 615, 123 N.W.2d 424, evidence of the use of other, diversely owned property in conjunction with the condemned property is admissible as affecting the reasonable market value of the property taken. This does not mean, however, that a Trial Court may properly submit to the jury for rendition of a separate verdict thereon, as was done here, the issue of the alleged damages to buildings and other improvements on a separate leased tract not taken or directly affected by the Condemnation. It is now felt that this Court committed error in this respect. * * *"

We cannot agree with the learned trial court that evidence on the issue of damages to personal property was inadmissible in this action and that it had no jurisdiction to consider damages to personal property not considered by the condemnation commission. In view of our conclusions in Divisions I and II hereof, the basis of the trial court's impression was wrong and, so

holding, we can think of no reason why separate verdicts are not proper in such matters. It seems to us that would be the best way for a jury to avoid any duplication of damages for a taking. In a way, each type of property is considered separately and each requires proof of loss under a definite measure of damage. By permitting two verdicts, the chance of jury confusion in making the condemnee whole is greatly reduced.

Of course, items of damage in condemnation cases may not be added to get a total loss, and that is not what is being done here. The statute provides for separate damages for taking land and for the reduction in value of personal property affected by the taking.

Although we have not heretofore specifically approved the two-verdict approach to such matters, we have not rejected it. See Gaar v. Iowa State Highway Commission, supra, 252 Iowa 1374, 1376, 110 N.W.2d 558, 559, where two verdicts were rendered, one for the real estate taken and one for personal property damaged or destroyed or reduced in value. Due to the failure of proof of ownership of the personalty at the time of condemnation, only the verdict for personal property was reversed.

■ We now hold, where the evidence shows a compensable loss to both real estate and personal property due to a condemnation, it is proper to permit the jury to consider each as a separate cause and to render verdicts accordingly.

The trial court also sustained grounds 4(e) and 4(f) which urged error in allowing testimony as to the before and after value of the buildings located upon the railroad land, ground 4(k) which urged error in giving Instruction No. 10, later discussed herein, ground 4(m) which urged error in giving Instruction No. 10-B, also later considered herein, ground 4(n) which urged error in giving Instruction No. 10-C because there was no evidence of the assignment of the original railroad lease to plaintiff, ground 4(p) which urged error in giving Instruction No. 11 permitting the jury to consider the probable duration of the lease, ground 4(q) which urged error in giving Instruction No. 14 permitting the jury to consider damages to personalty not located upon the condemned land, and ground 4(r) which urged error in submitting to the jury Form 2 for damages to personalty.

To understand some of these alleged errors, a recitation of some further facts is necessary. In the trial of this matter plaintiff offered evidence of his ownership of the buildings located upon the railroad property and testified as to his leasehold interest in that land. He testified the buildings were erected for use in this business by his predecessor under a lease wherein the lessee was to remove the buildings at the termination of the lease, and that he had been assigned the rights of the lessee thereunder.

■ We find no error in any of the above listed assignments, but will direct our special attention to grounds 4(k) and 4(m). Furthermore, the other assignments were not argued in this appeal and must be deemed waived. Rule 344(a) (4) (Third), R.C.P. Grounds 4(k) and 4(m), which were argued, refer to the giving of Instructions Nos. 10, 10-A, and 10-B.

IV. In Division III of its brief and argument the appellee contends the trial court was correct in ruling that the giving of Instructions Nos. 10 and 10-A was erroneous.

Instruction No. 10 told the jury:

"If you find from the evidence introduced at the trial of this case that the relationship of landlord and tenant existed between the Chicago, Milwaukee, St. Paul & Pacific Railroad Company and the plaintiff, and that the plaintiff was the owner of a sales barn located on the railroad premises, and that under the terms of whatever lease agreement, if any, existed between them, the plaintiff was permitted

to remove from the leased premises the sales barn building upon the termination of said lease, and if you further find that by virtue of the condemnation and taking of the real estate owned by the plaintiff, the sales barn building was damaged or reduced in value, then you should allow the plaintiff damages in such amount, but not to exceed $11,000.00, which is the amount claimed by him, as you find he sustained to the sales barn building by reason of the taking of his real estate. Such allowance would be in addition to your allowance for whatever amount you find was the fair and reasonable market value of his real estate condemned and taken on March 19, 1968."

Instruction No. 10-A told the jury:

"No particular form of words is necessary to make an instrument a lease and create the relationship of landlord and tenant and such relation is created by a contract which may either be express or implied by the conduct of the parties."

■ In Brief Point 1 the appellee argues that by giving Instruction No. 10 the trial court permitted the jury to find plaintiff could remove the sale barn, etc. from the allegedly-leased premises upon the termination of the lease, when the evidence showed the lease was in effect on the date of condemnation and at that time plaintiff could not remove that property from railroad land. Apparently it contends plaintiff's ownership of the barn, etc. depended upon the lease termination. We cannot agree. There was ample evidence this ownership had existed for over four years.

Holman v. Rook, Iowa, 271 N.W. 612, relied upon as authority for this proposition, we do not find in point. It merely held that when evident error in the instructions appears, the trial court does not abuse its discretion in awarding a new trial, a proposition not subject to debate.

In Brief Point 2 the appellee asserts an instruction not based on the evidence is erroneous in that it introduces before the jury facts not presented, citing 53 Am.Jur. 579, New Trial. We also find no fault with this proposition, but, as pointed out by appellant, the record does not support this contention. The record clearly shows the issue as to whether plaintiff had the right to remove the buildings at the termination of the lease was presented by the pleadings and the evidence, and hinges on whether it was shown to be his personal property. If these buildings were plaintiff's personal property removable on notice, as he claimed, they were his personal property at the time of the condemnation whether there had or had not been a prior termination of the lease. On the other hand, had this property been *removed* prior to the condemnation, as permitted under the lease termination option, of course no recovery could be had for its reduction in value. Gaar v. Iowa State Highway Commission, supra, 252 Iowa 1374, 110 N.W.2d 558.

It was incumbent upon the condemnee to allege and prove his ownership of the claimed use-connected personal property on the railroad property. He testified he paid the vendor $37,500 for this real and personal property and continued to operate the Decorah Sales Commission as a going business. Under the alleged lease agreement a sixty-day notice by either party could cause a termination of the original railroad lease. A penalty provision provided, unless the owner of the personalty removed it and restored the premises "on or before the effective date of such termination," it could be deemed abandoned.

There was substantial evidence introduced at the trial that plaintiff was a tenant of the railroad company under the lease agreement, that these buildings were erected and maintained as personal property of the lessee, that the lease had been assigned to plaintiff and was recognized and acknowledged by the company, that under the agreement, as the owner of this personalty, plaintiff was required to remove same from the leased land upon termination of the lease but on the date of con-

demnation had not done so, that by the taking its use at that location was destroyed, and that the reduction in value of this personalty due to the taking was established at $11,000.

Plaintiff's evidence further tended to prove a landlord and tenant relationship by conferences with company officials and by proof of rent payments, as well as by the conduct of the parties during plaintiff's tenancy. We find under these circumstances no error in giving Instructions Nos. 10 and 10–A.

■ Appellee next contends that the court correctly found it was error to instruct the jury in regard to tenancy at will in Instruction No. 10–B when there was no evidence of that relationship in the record.

Instruction No. 10–B told the jury:

"You are instructed that under the laws of the State of Iowa any person in possession of real estate with the assent of the owner is presumed to be a tenant at will until the contrary is shown."

Perhaps this instruction was of little value to the jury, but we find no merit in the contention that there was no evidence of a tenancy at will. Clearly, plaintiff established his possession of the railroad land and of the payment of rent for its use by him. However, in order to recover here he also had to prove the terms of the lease agreement by which he obtained and held ownership of the buildings. He claimed no damage for loss of a leasehold and, if the jury found he was only a tenant at will, his effort to recover damages for loss of value of personal property would fail. We find the instruction did have support in the record, but did not aid appellant or prejudice appellee.

■ The rule is well established in this jurisdiction that, in considering whether there was evidentiary support for an instruction, we must give the evidence the most favorable construction it will reasonably bear. Rule 344(f) (2), R.C.P.; Clubb v. Osborn, 256 Iowa 1154, 1161, 130 N.W. 2d 648, 652. Applying that rule here, we find no error in the giving of Instruction No. 10–B and conclude none of the specific errors relied upon as grounds for a new trial can be sustained in this appeal.

V. We are satisfied that the personal property award here should stand. The testimony as to its reduced value was proper and sufficient to justify a jury finding (1) that plaintiff owned the personal property involved at the time of condemnation, (2) that it was used in connection with the land taken, and (3) that it was not usable at that location after the condemnation.

■ We conclude the legislature in section 472.14 intended to include as compensable, damages to personal property on land owned or leased by the condemnee and used in connection with the property taken by eminent domain proceedings, regardless of whether it is actually located on the land condemned. No other interpretation would accomplish substantial justice in this case.

Having found the trial court erred in sustaining specific grounds for the new trial granted, we must reverse and reinstate the original verdicts rendered.

Reversed and remanded with instructions to reinstate the original verdicts.

SNELL, MOORE, MASON, RAWLINGS, BECKER and LeGRAND, JJ., concur.

GARFIELD, C. J., and STUART, J., concur in result.