NIDY & COMPANY, Inc., Appellee,

v.

STATE of Iowa, Appellant.

No. 54460.

Supreme Court of Iowa.

Sept. 9, 1971.

Raymond Rosenberg, Des Moines, for appellant.

Herrick, Langdon, Belin & Harris, and Robert D. Hall, Des Moines, for appellee.

LeGRAND, Justice.

This appeal raises questions concerning the proper measure of damages in leasehold condemnations since the amendments of 1959 and 1965 to section 472.14, The Code. We reverse and remand for a new trial.

Plaintiff is an Iowa corporation engaged in the distribution of animal health supplies and pharmaceuticals and in the manufacture and sale of leather products. Prior to this condemnation the corporation carried on its main business in Des Moines in two adjoining buildings leased from Donald C. Wise and his wife, Opal D. Wise, who are also the controlling stockholders, officers and directors of plaintiff corporation. In 1967, the State condemned the real estate owned by Mr. and Mrs. Wise but failed to take the leasehold interests of the corporation. Thereafter the corporation successfully brought a mandamus action to compel eminent domain proceedings by the State to compensate it for the value of the leaseholds, reduction in value of personal property used on the leased premises, and moving expenses.

Defendant asserts five errors in asking a reversal. All except one deal with the award to plaintiff for "damage to or destruction of or reduction in value" of personal property used on the leased premises. The remaining assigned error is grounded on the admission of, and subsequent refusal to strike, certain evidence showing specific items of expense incurred by plaintiff in connection with the condemnation proceedings.

The verdict was for $21,000. In response to three special interrogatories the jury broke down the award as follows: value of leasehold, $15,000; destruction or diminution in value of plaintiff's personal property, $5000; and moving expense, $1000.

By requiring the jury to make findings of the amounts allowed for each item of recovery, the trial court adopted the multiple-verdict approach which was specifically approved in Wilkes v. Iowa State Highway Commission, 172 N.W.2d 790, 798 (Iowa 1969), by this language, " * * * where the evidence shows a compensable loss to both real estate and personal property due to a condemnation, it is proper to permit the jury to consider each as a separate cause and to render verdicts accordingly."

Although that case involved personal property used in connection with a condemned fee, the provisions of section 472.-14, The Code, 1966, are expressly applicable also to a tenant's loss. See Skaff v. City of Sioux City, 255 Iowa 49, 54, 120 N.W.2d 439, 441 (1963).

We discuss together the assigned errors dealing with the $5000 award for diminution in value of plaintiff's personal property.

■ I. A lessee, of course, is entitled to damages for the condemnation of his leasehold. Des Moines Wet Wash Laundry v. Des Moines, 197 Iowa 1082, 198 N. W. 486 (1924); Batcheller v. Iowa State Highway Commission, 251 Iowa 364, 101 N.W.2d 30 (1960); Interstate Finance Corporation v. Iowa City, 260 Iowa 270, 149 N.W.2d 308 (1967). However, prior to 1959 there was no separate award for loss to personal property which, although not condemned, was used in connection with occupancy under the lease. The *use* of such personal property was an element to be considered in arriving at the value of the leasehold interest, but there was no compensation for its damage, destruction, or reduction in value. Gaar v. Iowa State

Highway Commission, 252 Iowa 1374, 1376, 110 N.W.2d 558, 560 (1961).

In 1959, (chapter 318, section 3, Acts of the Fifty-eighth General Assembly), section 472.14 was amended by adding the following:

"In assessing the damages the owner or tenant will sustain, the commissioners shall consider and make allowance for personal property which is damaged or destroyed or reduced in value."

It is clear from Gaar v. Iowa State Highway Commission and Wilkes v. Iowa State Highway Commission, both supra, that this amendment did more than expand an already existing right; it afforded a separate and distinct recovery for damage not compensable before its adoption. The parties both agree this is true.

We discussed the legislative purpose behind this amendment in the Wilkes case (172 N.W.2d at page 796) this way:

"Furthermore, we have often stated generally the purpose and intent of eminent domain laws are to secure a person from loss due to a taking of his property for public use, and have said he is to be made 'whole', as near as possible, by way of adequate compensation for his loss. * * * We think it is a fair conclusion that the legislature had this object and purpose in mind when it enacted the amendments to section 472.14 in 1959 and 1965. * * *"

Although not germane to the particular issue involved here, both the majority and dissenting opinions in Skaff v. Sioux City, 255 Iowa 49, 120 N.W.2d 439 (1963), are of interest on the general question.

The Skaff case, incidentally, as we pointed out in Wilkes, triggered the 1965 amendment to section 472.14. In Skaff we excluded any award for the expense of moving merchandise by holding such an allowance was not within the purview of the statute. The legislature then again amended section 472.14 to authorize such a payment to the extent of $500. (chapter 378, Acts of the Sixty-first General Assembly.)

We now have statutory authority to separately compensate a lessee-condemnee both for "damage to or destruction of or diminution in value of" his personal property (the 1959 amendment) and for his moving expense up to $500 (the 1965 amendment).

Although we have decided several leasehold condemnation cases since the adoption of one or both of these amendments, we have not heretofore been asked to consider their impact generally on the proper measure of damages. Estelle v. Iowa State Highway Commission, 254 Iowa 1238, 119 N.W.2d 900 (1963); Interstate Finance Corporation v. Iowa City, 260 Iowa 270, 149 N.W.2d 308 (1967); Wilkes v. Iowa State Highway Commission, 172 N.W.2d 790 (Iowa 1969), which concerned condemnation of a fee but dealt with the use of personal property located on an adjoining leasehold.

As already mentioned, the amendments of 1959 and 1965 created a new right to recover for two items of damage which had not been directly compensable before.

It is indisputable that by providing for their separate allowance the legislature intended to eliminate them as elements to be considered in fixing the market value of the unexpired term of the lease—where they never logically belonged in the first place.

Applying section 472.14 as amended to the case at hand, we hold that, although the jury was properly allowed to assess recovery for the value of the unexpired term of the two leases, loss to personal property used on the leased premises, and moving expense to the extent of $500 for each lease, defendant is right in claiming the trial court committed reversible error in

the instructions by (1) using an incorrect measure of damages and (2) by allowing the jury to make double allowance for some items of loss.

Defendant's attack is directed against Instructions 7 and 10 setting up the guidelines by which the jury was to fix the value of the condemned leaseholds and the damage to the personal property used on the leased premises.

II. We consider first Instruction 10 covering loss to personal property. The pertinent part of that instruction told the jury:

"The law of Iowa provides that in assessing the damages which a tenant will sustain, allowance shall be made for personal property which is damaged or destroyed or reduced in value.

"It is a claim of the planitiff that it had personal property which was damaged, destroyed or reduced in value, and in the event you find that plaintiff did have personal property that was damaged, destroyed or reduced in value as the result of the action of the defendants in connection with this condemnation proceedings, *you will allow plaintiff the fair and reasonable value of such personal property to the extent that the same was damaged, destroyed, or reduced in value. \* \* \*"* (Emphasis added.)

■ Defendant's timely objection to this instruction squarely raised the issue that the jury was not given the correct measure of damages by which to judge plaintiff's loss—the fair market value of the property immediately before the condemnation less its fair market value immediately after. We agree; and we agree, too, that defendant must have a new trial because of the error.

Section 472.14 contemplates three types of compensable injury to personal property: damage; destruction; or reduction in value. Claim is made here only for the last two of these, and we accordingly limit our discussion to the measure of recovery when there is either destruction or reduction in value of the property in question.

We stated the proper standard of recovery in such cases in Wilkes v. Iowa State Highway Commission, supra, where we said, "His claim for loss [in the value of personal property used in connection with condemned real estate] was properly shown as the difference between the before and after value of that property, and \* \* \* this loss of value or destruction [was] \* \* \* compensable under section 472.14." (172 N.W.2d 795).

■ This is the measure which should have been used here instead of the one which incorrectly told the jury to allow recovery to the extent the property "was damaged, destroyed or reduced in value." While the instruction indeed uses the identical language of the statute, it is nevertheless fatally bad because it failed to advise —either there or elsewhere—the only acceptable manner in which this could be done.

In considering analogous questions of damage depending on the before and after value of property, we have announced rules which are applicable here. In Johnson v. Scott, 258 Iowa 1267, 1270, 142 N. W.2d 460, 462 (1966), we reversed because there was "no starting basis, no competent before accident value testimony upon which the jury could determine the amount of damage to plaintiff's vehicle." See also the supporting authorities cited there.

While Johnson v. Scott was concerned with an absence of evidence by which the jury could find a starting value as a basis for its award, we believe the error is equally reversible where, as here, the jury is not told this standard (the difference between the before and after values) is the one which determines the amount of recovery.

Defendant also insists there was no competent evidence on this issue to justify its submission even if the instruction had set out the correct measure of damages. We

need not reach this point since defendant asks no relief here except a new trial, which it has been granted.

III. We next consider the interplay of Instructions 7 and 10 on this issue. We have already set out the material portion of Instruction 10. Instruction 7 is as follows:

"In determining the fair and reasonable market value of the two respective leaseholds of plaintiff as heretofore defined not as distinct and independent items of damage but as elements bearing upon and tending to show the reasonable market value thereof * * *, you may consider all the varied elements of value as described by the evidence in this case in regard to the terms of the respective leases of plaintiff, the location of the premises, the surroundings thereof, accessibility, the respective uses to which the same have been put, the improvements and fixtures located thereon, the manner of using the same in connection with the businesses the plaintiff was conducting with said buildings and fixtures, *the damages* [to or] *destruction of personal property and reduction in value, if any, of plaintiff's equipment and property installed on said premises, and these matters are all proper to be considered by you in determining the value of plaintiff's respective leaseholds.*

"You are not to collect or compute independent or specific items and elements of damages and consider the sum thereof as the damage to which the plaintiff is entitled. In other words, the plaintiff is not entitled to recover the cost of any specific item or the sum total of various items as such, and the matters above suggested and other facts and circumstances as shown in the evidence should be considered by you only insofar as they may bear upon the fair and reasonable value of the plaintiff's respective leasehold interests as a whole * * *." (Emphasis added.)

■ Defendant argues the part of the instruction to which emphasis has been added, when considered with Instruction 10, allows double recovery for damage to personal property. We agree.

The instruction told the jury to evaluate the leasehold interest of plaintiff by considering, among other circumstances, "the damages to or destruction of personal property and reduction in value, if any, of plaintiff's equipment and property installed on said premises." The trial court clearly intended by this repetition of the statutory language to include the *amount of the loss* to the personal property as an element in fixing the value of the leasehold.

But this is the very item for which plaintiff had already been compensated under Instruction 10. Surely it cannot be said that the legislature, in eliminating one injustice by amending section 472.14 to allow a condemnee recovery for loss to his personal property, at the same time intended the creation of another by now permitting him to be compensated for it *twice*. Yet that is the effect of Instructions 7 and 10 when read together.

■ This in no way prevents recovery for the enhanced value of the lease because of the *use* of the condemnee's personal property as part of the right of occupancy. The market value of the leasehold is still to be appraised by considering what it is worth as improved by the tenant and includes such elements as location, accessibility, possible uses, improvements and fixtures and their *use*.

The collateral loss—damage caused to specific property by the condemnation—is now compensable separately and has no place in a consideration of the market value of the lease.

■ It was error to instruct otherwise. We now hold that in condemnation cases, when it is claimed there has been injury to personal property for which separate award may be made or when reimbursement for moving costs is asked, such matters are to be excluded from consideration

in determining the value of the leasehold. They may *not* be included as elements which fix the compensation for a condemnee's loss of occupancy.

IV. Because there must be another trial we should consider defendant's claim of error in the admission of certain evidence relating to moving costs.

Mr. Wise testified to 16 separate items of expense incurred in moving to a new location. He ascribed a specific dollar amount to each one.

Defendant objected to all such testimony on the general ground of incompetency, irrelevancy, and immateriality "to any of the issues in the case." Without stopping to consider the adequacy of such an objection to save any error for review (Linge v. Iowa State Highway Commission, 260 Iowa 1226, 1231, 150 N.W.2d 642, 645 (1967), we find no error in the trial court's ruling.

Defendant relies heavily on Freshwater v. Wildman, 254 Iowa 404, 117 N.W.2d 910 (1962) and Estelle v. Iowa State Highway Commission, 254 Iowa 1238, 119 N.W.2d 900 (1963). These cases do not support defendant's argument.

One answer to defendant is that its authority relates to condemnations which predated the 1965 amendment to section 472.14 (chapter 378, Acts of the Sixty-first General Assembly), which specifically made moving costs recoverable to the extent of $500. This statutory change not only permits, but requires, proof of the cost of moving if plaintiff is to recover for it.

Even aside from that, however, we believe the evidence was admissible as having some bearing on the value of the property after condemnation.

V. Finally plaintiff suggests that, if we find error, we should reverse only as to the $5000 award for damage to personal property since the errors assigned do not attack the award for the lost leaseholds nor the allowance for moving expense.

However, since they go significantly to the determination of the leasehold value, defendant is entitled to a new trial on all issues.

The case is accordingly reversed and remanded for new trial.

Reversed and remanded.

All Justices concur except REYNOLDSON, J., who takes no part.